IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAYLE WAYNE JONES,

    Petitioner,               No. CIV S-09-2169 JAM GGH P

    vs.

MATTHEW CATE,

    Respondent.          FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 guilty plea to dissuading a witness, attempting to dissuade a witness and evading a police officer. He admitted two prior strike convictions and was sentenced to a term of 25 years to life. This action is proceeding on the original petition filed August 6, 2009, raising the following claims: 1) the trial court erred in denying petitioner's motion to substitute counsel, framed in state court as a Marsden[1] motion; 2) counsel for the plea was ineffective for not obtaining a change of venue; 3) counsel for the plea

---

[1] In People v. Marsden, 2 Cal.3d 118 (1970), the California Supreme Court held that a trial court must permit a defendant seeking a substitution of counsel to specify the reasons for his request.

was ineffective for failing to attack a prior conviction; 4) counsel for the plea was ineffective for failing to obtain the medical records of the victim; and 5) petitioner's substitute counsel was ineffective for failing to move to withdraw the guilty plea. [2]  Petition at 5-11.

After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the

---

[2] For the reasons discussed below the undersigned has addressed petitioner's claims in a different order than presented in the petition and answer.

2

deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in

adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> On July 4, 2004, [petitioner] got into an argument with his wife, D., after she consoled their young son, whom [petitioner] had accidentally hit while closing a sliding glass door. As they argued, [petitioner] placed his hands on D.'s shoulder and face and shoved her to the couch with both hands. Their son witnessed the fight.
>
> The next day, D. heard her son crying. She went to investigate and saw him stumble in his bedroom. D. asked [petitioner] what happened and he told her it was none of her business. D. responded by saying perhaps this was for children's protective services. [Petitioner] responded that if D. called the authorities he would kill her before they arrived.
>
> [Petitioner] grabbed D. by the arms and pushed her from the bedroom to the kitchen, where she struck the stove and counter. As a result of [petitioner's] assault, D. sustained bruises to her hip, lower back, and arm. D. subsequently secured an emergency protective order, which was served on [petitioner].
>
> Amador County Sheriff's Sergeant Gary Redman had been told that [petitioner] had been at D.'s place of employment in violation of the protective order. On July 7, 2004, around 11:50 a.m., Redman activated his lights and siren after seeing [petitioner] in his truck. [Petitioner] first slowed down to pull over and then rapidly accelerated to between 45 and 55 miles per hour. During the chase [petitioner] reached speeds of 85 to 90 miles per hour, forced numerous vehicles off the road, and collided with a car. [Petitioner] was eventually stopped and arrested.
>
> Between July 7, 2004, and April 20, 2005, [petitioner] made a series of telephone calls to his wife, his brother, his mother, and other people in an attempt to prevent his wife, son, and others from testifying against him. The calls were recorded and transcribed.

People v. Jones, 2008 WL 510558 at *1.

////

IV. <u>Analysis</u>

<u>Standards for an Evidentiary Hearing</u>

The ordinary standards under federal law for an evidentiary hearing, which are well known and well established in the Ninth Circuit, are as follows. "To obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." <u>Correll v Stewart</u>, 137 F.3d 1404, 1413 (9th Cir. 1998). Nevertheless, the court does not have to hold an evidentiary hearing when the record clearly refutes the collateral factual allegations raised by petitioner. <u>Schiro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1940 (2007). Moreover, <u>Schriro</u> also announced that in determining whether to grant an evidentiary hearing the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts. <u>Id</u>. Thus, for example, if the reasons for counsel actions were at issue, but under deferential standards, the court could not find prejudice, no evidentiary hearing would be necessary.

In addition, the undersigned emphasizes that in order to obtain an evidentiary hearing, the claim, when viewed in light of the allegations, must be colorable. "It is well settled that '[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995) quoting <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994). This includes the recitation of critical facts supporting the alleged violation, including any requirement of prejudice. The necessity for the statement of a colorable claim is important for the resolution of several claims herein without holding an evidentiary hearing.

For the reasons set forth below, petitioner has not set forth colorable claims that would require an evidentiary hearing regarding any of the claims in the petition.

////

5

Claim 1- Substitute Counsel Denied (Related to Marsden Motion)

Petitioner first argues that his "motion for substitute counsel was improperly denied in violation of 6th Amendment right to effective assistance of counsel." Respondent considers this simply an assertion that petitioner's Marsden motion was improperly denied, and thus, simply an assertion of state law violation. However, respondent cannot restate petitioner's expressly stated claim simply to fit an argument respondent would like to make. While the federal claim, as discussed below, has much similarity with the state claim, it is still a federal claim.[3]

Legal Standard

A defendant has a Sixth Amendment right to conflict-free representation. United States v. Moore, 159 F.3d 1154, 1157 (9th Cir. 1998). Not every conflict between a defendant and counsel, however, implicates the Sixth Amendment. See Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000). As the Supreme Court has explained, the right to counsel does not guarantee "a right to counsel with whom the accused has a 'meaningful attorney-client relationship.'" Morris v. Slappy, 461 U.S. 1, 3-4, 103 S.Ct. 1610 (1983). Nevertheless, where a court "compel[s] one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in [an] irreconcilable conflict[it] deprive[s] him of the effective assistance of any counsel whatsoever." Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970). Thus, a reviewing court must assess the nature and extent of the conflict and whether that conflict deprived the defendant of representation guaranteed by the Sixth Amendment. Schell, 218 F.3d at 1027.

Daniels v. Woodford, 428 F.3d 1181, 1196-97 (9th Cir. 2005)[4]

Discussion

Although the Court of Appeal discussed this issue in the context of a Marsden

---

[3] Similarly, respondent's tautological statement that the claims have been exhausted to the extent they were exhausted will not permit an argument now that exhaustion of the *federal* substitution of counsel claim has not been performed. Respondent has waived any exhaustion claim by indicating his position that the claim is exhausted and by not actually arguing a lack of exhaustion.

[4] Although Daniels was not an AEDPA case, the law on this point is reflective of established Supreme Court authority. See McCord v. California, 377 Fed. Appx. 631 (9th Cir. 2010).

6

motion, its reasoning is instructive to the federal issue:

> Four months after pleading guilty and admitting prior convictions, [petitioner] made a Marsden motion. In support of his motion, he told the court that his counsel had never filed a change of venue motion that [petitioner] had requested. He also complained about counsel's failure to obtain the transcripts from the preliminary hearing for his prior robbery conviction and counsel's failure to obtain [petitioner's] medical records.
>
> Counsel replied by telling the court he had been unable to find someone to do the polling to support a change of venue motion, but had told the prosecutor that he would file the motion if the prosecutor continued to make statements about the case to the press. The prosecutor agreed to stop making comments about the case, so counsel felt a change of venue motion was no longer necessary.
>
> Counsel told the court he "honestly believe[d]" he had the preliminary hearing transcripts from the prior robbery and "remember[ed]" reading them. He could not find the transcripts, but counsel felt they would not "undermine that robbery significantly." Counsel had no explanation for not getting [petitioner's] medical records, and told the court [petitioner] had also asked counsel to get his wife's psychological records, which he had not yet done.
>
> The trial court stated [petitioner] had not been in the news every day, and a change of venue motion was unlikely to succeed. Regarding the medical records, the court was not sure how they would be relevant to his sentence. The court also informed [petitioner] that the preliminary hearing transcript from the prior robbery conviction would be of very limited utility to his defense. After an exchange about [petitioner's] possible sentence, the court denied the Marsden motion.
>
> [Petitioner] contends the trial court was presented with three reasons that justified granting the Marsden motion-counsel's failure to secure the preliminary hearing transcript from the prior conviction, failing to get the wife's medical records, and not filing a change of venue motion. We disagree.
>
> A defendant is entitled to discharge his appointed counsel only if the record clearly shows counsel is not providing adequate representation or that defendant and counsel have become so embroiled in conflict that ineffective representation will likely result. (People v. Barnett (1998) 17 Cal.4th 1044, 1085.) We review the trial court's denial of a Marsden motion for abuse of discretion, and will find such an abuse only where the defendant has shown the failure to replace appointed counsel would substantially impair defendant's right to assistance of counsel. (Ibid.)
>
> We agree with the trial court that [petitioner] failed to carry his burden of showing ineffective representation. The trial court, a member of the community, indicated the change of venue motion was not likely to succeed. Counsel told the court he had used the threat of a change of venue motion to get the prosecution to refrain from talking to the press about the case. The record provides us with no reason to conclude [petitioner] was at risk of an unfair venue or that the trial court abused its discretion in determining [petitioner] was not prejudiced by counsel's failure to file the change of venue motion.

Nor can we find counsel's failure to locate the preliminary hearing transcripts justification for granting a Marsden motion. While the circumstances of a prior conviction are relevant on a motion to dismiss a strike (People v. Williams (1998) 17 Cal.4th 148, 161), we cannot say [petitioner's] allegations established a likelihood of prejudice resulting from counsel's actions.

The prior robbery conviction stemmed from an incident in which [petitioner] was found inside the victim's sports utility vehicle (SUV) in a parking lot. The victim's husband parked directly behind the SUV, blocking [petitioner] in. [Petitioner] started the SUV, put it into reverse, and hit the husband's car. [Petitioner] then took a cell phone and the keys from the SUV and fled; he was eventually apprehended.

At the Marsden hearing, [petitioner] told the court he wanted the preliminary hearing transcript because it contained testimony that the vehicle [petitioner] hit was not parked and [petitioner] did not intend to ram the vehicle.

[Petitioner's] allegation concerning what the preliminary hearing transcript of his prior robbery conviction might show would not have affected the court's sentencing decision. This is because [petitioner] admitted all of the elements of that crime with his guilty plea. The court was also presented with the rest of his criminal record, his current felony convictions, and the numerous counts of domestic abuse that were dismissed with a Harvey [citation omitted] waiver.

A sentencing court has only limited discretion to strike a prior felony conviction in the furtherance of justice. (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 530.) Any failure by trial counsel regarding the preliminary hearing transcript of the prior robbery did not prejudice [petitioner].

[Petitioner's] final contention regarding the Marsden motion, that counsel was ineffective for failing to seek D.'s psychological records, was brought to the trial court's attention by counsel rather than by [petitioner]. While his wife's mental health records could have been relevant had defendant gone to trial, defendant raised his Marsden motion after pleading guilty.

We also reject [petitioner's] contention that examination of D.'s medical records might have made counsel aware that D. would be unwilling to go through the rigors of a trial. D. was not the only witness to [petitioner's] attacks against her. Their son also told officers that he saw [petitioner] push his mother onto the couch and that he had witnessed prior attacks by [petitioner] against her. The letter submitted at the restitution hearing does not indicate that D. was too incapacitated to go through the rigors of a trial. Any contention that she might have been unwilling to go through a trial is speculative and not a ground for granting the Marsden motion.

Confronted with the Marsden motion, the trial court gave [petitioner] a chance to explain his dissatisfaction with counsel, and required counsel to respond where appropriate. [Petitioner] has not "shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel" or that he has received inadequate representation from his appointed counsel. (People v. Smith (1993) 6 Cal.4th 684, 696.) The trial court's denial of the Marsden motion

was not an abuse of discretion.

People v. Jones, 2008 WL 510558 at *1-3.

Petitioner has failed to set forth any facts demonstrating the state court opinion is contrary to any established Supreme Court authority. The facts set forth in the opinion show only a post-hoc disagreement of tactics or performance. Petitioner merely states herein that the trial court decision was incorrect without setting forth any arguments or factual background to his claim. Instead of setting forth factual allegations, petitioner requests an evidentiary hearing to shed light on his claim.

However, petitioner must allege some facts showing that communication with his counsel had broken down, not merely that he disagreed with his counsel's tactics or performance. And, as shown below, petitioner cannot demonstrate any prejudice stemming from his disagreements with counsel–even if some of these disagreements had been raised prior to his guilty plea and not months afterwards. The court will not hold an evidentiary hearing on the mere chance that petitioner might obtain some facts as to relationship breakdown– facts which petitioner has not even alleged here. As this claim is meritless, petitioner's request for an evidentiary hearing is denied. Moreover, as petitioner has failed to show a violation of established Supreme Court authority this claim should be denied.

Claims 2-4: Ineffective Assistance of Counsel

In the instant federal petition, petitioner makes three allegations of ineffective assistance of counsel based on the claims raised in the Marsden hearing. Petitioner alleges that counsel for the plea was ineffective for not obtaining a change of venue, failing to attack a prior conviction and failing to obtain the medical records of the victim.

While these claims were raised in the federal petition it is not entirely clear if they were properly exhausted on direct appeal.[5] The California Court of Appeal opinion, while

---

[5] Respondent has not raised this issue.

addressing these claims with respect to the Marsden motion, did not address the claims with respect to a separate claim of ineffective assistance of counsel. The undersigned does not have a copy of petitioner's brief to the Court of Appeal, so it is unknown what issues were raised or how they were raised. Yet, petitioner's brief to the California Supreme Court did raise ineffective assistance of counsel with respect to these three claims, and these claims were summarily denied.

Rather than order briefing on the exhaustion issue, the undersigned will look to the merits of these claims, as respondent has waived any exhaustion issue and, in any event, a petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

Legal Standard

If a state court denies constitutional claims without an explicated decision, a federal court reviewing a habeas corpus application pursuant to § 2254(a) "ha[s] no basis other than the record for knowing whether the state court correctly identified the governing legal principle or was extending the principle into a new context." Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state court decision is an "unreasonable application" of Supreme Court law.' " Luna v. Cambra, 306 F.3d 954, 960 (9th Cir.2002). Thus, pursuant to Delgado, the Court must conduct an independent review of the record to determine whether the state court's decision was objectively unreasonable. In Delgado, the Ninth Circuit held that, "Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." 223 F.3d at 982; see also Luna, 306 F.3d at 954 (quoting Fisher v. Roe, 263 F.3d 906, 915 (9th Cir. 2001) (internal citation omitted) ("We reverse only if 'a careful review of the record and the applicable case law leaves us with the "firm conviction" that the state court was wrong.' ")).

In Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984), the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." The Strickland test applies to ineffective assistance of counsel claims relating from the plea process. See Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002) (citing Hill, 474 U.S. at 57-58).

"Deficient performance" in this context means unreasonable representation falling below professional norms prevailing at the time of trial. Strickland, 466 U.S. at 688-89. To show "deficient performance," petitioner must overcome a "strong presumption" that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. The Court must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." Id. The Supreme Court in Strickland recognized that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Accordingly, to overturn the strong presumption of adequate assistance, petitioner must demonstrate that "the challenged action cannot reasonably be considered sound trial strategy under the circumstances of the case." Lord v. Wood, 184 F.3d 1083, 1085 (9th Cir. 1999). In the context of a guilty plea, "the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." See Lambert v. Blodgett, 393 F.3d 942, 979 (9th Cir. 2004).

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (noting that the "prejudice" component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). In the context of a guilty plea challenge, in order to satisfy the Strickland prejudice requirement, the defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); United States v. Howard, 381 F.3d 873, 882 (9th Cir.2004) ("To satisfy Strickland's prejudice prong, [a defendant] must allege that but for counsel's errors, he would either have gone to trial or received a better plea bargain.").

Change of Venue

Petitioner first argues that counsel was ineffective for failing to move for a change of venue.

The Sixth Amendment guarantees every defendant the right to a fair trial by an impartial jury. "If pretrial publicity is such that it is impossible to seat such a jury, a judge must grant a defendant's request for a change of venue." Randolph v. California, 380 F.3d 1133, 1142 (9th Cir. 2004). The requirement of an impartial jury, however, does not require "a jury completely ignorant of the facts." United States v. Sherwood, 98 F.3d 402, 410 (9th Cir. 1996).

In order to establish a constitutional violation on the basis of pretrial publicity, the defendant must establish either actual or presumed prejudice. Randolph, 380 F.3d at 1142. Actual prejudice is established when the defendant demonstrates that "jurors exhibited actual partiality or hostility that could not be laid aside." Id. "Prejudice is presumed only in extreme instances 'when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime.'" Daniels v. Woodford, 428 F.3d 1181, 1211 (9th Cir. 2005) (quoting Ainsworth v. Calderon, 138 F.3d 787, 795 (9th Cir. 1998), as amended, 152 F.3d 1223).

Petitioner alleges that a change of venue should have been filed by counsel due to the prejudicial pretrial publicity. However, petitioner does not describe the publicity that would have allegedly implicated his right to a fair trial.[6] During the Marsden hearing, the trial court stated the following:

> . . . in terms of change of venue, the rule generally is that, you know, just because you ask for it doesn't mean that the attorney feels that he needs to do it. I can understand his perspective in this case, far cry from the Peterson case.[7] You haven't been in the news everyday since the event took place. I tend to concur that your chances of prevailing on change of venue would be difficult, just based on what's happened in this community and the level of publication that was here.

Reporters Transcript 1, Marsden Hearing (RT1) at 95.

On appeal, the Court of Appeal also discussed lack of merit with respect to petitioner's requested change of venue motion.

> Counsel replied by telling the court he had been unable to find someone to do the polling to support a change of venue motion, but had told the prosecutor that he would file the motion if the prosecutor continued to make statements about the case to the press. The prosecutor agreed to stop making comments about the case, so counsel felt a change of venue motion was no longer necessary. . .
> . . .
> We agree with the trial court that [petitioner] failed to carry his burden of showing ineffective representation. The trial court, a member of the community, indicated the change of venue motion was not likely to succeed. Counsel told the court he had used the threat of a change of venue motion to get the prosecution to refrain from talking to the press about the case. The record provides us with no reason to conclude [petitioner] was at risk of an unfair venue or that the trial court abused its discretion in determining [petitioner] was not prejudiced by counsel's failure to file the change of venue motion.

People v. Jones, 2008 WL 510558 at *1-2.

Here, there is no evidence of any pretrial publicity that would rise to the level necessary for a change of venue motion. There is no indication that the size of the community or

---

[6] There are references to statements from the prosecutor, but none of these statements have been provided to the court.

[7] The undersigned believes the trial court was referring to the Scott Peterson murder case and notes the instant case dealt with assault, dissuading a witness and evading police.

13

petitioner's status within the community somehow would have implicated his right to a fair and impartial trial. Petitioner does not explain why his violent domestic dispute, and charges which stemmed from that dispute, would have aroused the citizenry to the point where most would have been biased against him. In fact, petitioner has not even described the alleged negative pretrial publicity. Under these circumstances, petitioner fails to meet either prong of the Strickland standard. Petitioner's inability to even posit facts about the need to change venue does not permit an evidentiary hearing on why counsel did not so move. Thus, this claim should be denied.

Prior Felony

Petitioner next contends that counsel was ineffective for failing to obtain the transcripts related to a prior [robbery] conviction in order to strike that conviction.

The Court of Appeal opinion sets forth the relevant background of this claim:

> Counsel told the court he "honestly believe[d]" he had the preliminary hearing transcripts from the prior robbery and "remember[ed]" reading them. He could not find the transcripts, but counsel felt they would not "undermine that robbery significantly."
>
> . . .
>
> Nor can we find counsel's failure to locate the preliminary hearing transcripts justification for granting a Marsden motion. While the circumstances of a prior conviction are relevant on a motion to dismiss a strike (People v. Williams (1998) 17 Cal.4th 148, 161), we cannot say [petitioner's] allegations established a likelihood of prejudice resulting from counsel's actions.
>
> The prior robbery conviction stemmed from an incident in which [petitioner] was found inside the victim's sports utility vehicle (SUV) in a parking lot. The victim's husband parked directly behind the SUV, blocking [petitioner] in. [Petitioner] started the SUV, put it into reverse, and hit the husband's car. [Petitioner] then took a cell phone and the keys from the SUV and fled; he was eventually apprehended.
>
> At the Marsden hearing, [petitioner] told the court he wanted the preliminary hearing transcript because it contained testimony that the vehicle [petitioner] hit was not parked and [petitioner] did not intend to ram the vehicle.
>
> [Petitioner's] allegation concerning what the preliminary hearing transcript of his prior robbery conviction might show would not have affected the court's sentencing decision. This is because [petitioner] admitted all of the elements of that crime with his guilty plea. The court was also presented with the rest of his

14

>criminal record, his current felony convictions, and the numerous counts of domestic abuse that were dismissed with a Harvey [citation omitted] waiver.
>
>A sentencing court has only limited discretion to strike a prior felony conviction in the furtherance of justice. (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 530.) Any failure by trial counsel regarding the preliminary hearing transcript of the prior robbery did not prejudice [petitioner].

People v. Jones, 2008 WL 510558 at *1-3.

At his plea colloquy petitioner admitted the prior conviction related to the robbery. Reporter's Transcript 2 (RT2) at 69-70. It is not disputed that the prior crime was a felony from 1998. The United States Supreme Court held in Lackawanna County District Attorney v. Coss, 532 U.S. 394, 121 S.Ct. 1567 (2001), that "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available .... the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." Lackawanna, 532 U.S. at 403-04.

In the instant case, it appears that petitioner does not challenge the validity of the prior strike, rather he argues that counsel was ineffective for failing to argue that the circumstances of the prior felony were such that the trial court in the instant case should not have considered it. If such an argument could be made, it needed to be made because avoidance of the Three Strikes sentence depended upon the discretionary striking of the prior.

The Marsden hearing was held on February 7, 2006. RT1 at 1. On that date, petitioner presented his arguments concerning the transcript and why he felt counsel was ineffective for not obtaining them prior to the plea to facilitate the striking the felony. However, petitioner still had the opportunity to file a Romero motion to strike the felony.[8] Yet, on March

---

[8] In People v. Superior Court (Romero), 13 Cal. 4th 497 (1996), the California Supreme Court held a trial judge has the discretion to strike a prior felony conviction, within the meaning of California's "Three Strikes Law" for the purposes of sentencing.

15

1  28, 2006, petitioner withdrew his Romero motion, even though he still had the ability to
2  challenge the strike. RT2 at 113. In the instant petition, petitioner does not address why he
3  chose not to attack the prior conviction at sentencing and instead wait until now.
4        While petitioner faults counsel for not obtaining the transcript, counsel testified
5  that while he no longer had the transcript in his possession, he had read the transcript and did not
6  feel it would undermine the felony. Regardless of the fact that counsel read the transcript, the
7  Court of Appeal also discussed the facts of petitioner's claim and found that petitioner's prior
8  felony would not have been struck. The undersigned repeats that description set forth in the facts
9  for the first claim, supra:

> The prior robbery conviction stemmed from an incident in which [petitioner] was found inside the victim's sports utility vehicle (SUV) in a parking lot. The victim's husband parked directly behind the SUV, blocking [petitioner] in. [Petitioner] started the SUV, put it into reverse, and hit the husband's car. [Petitioner] then took a cell phone and the keys from the SUV and fled; he was eventually apprehended.

14  The record supplied to the court does not contain a preliminary hearing transcript from the prior
15  robbery. It does, however, contain the arrest reports from that prior incident. CT2 at 498-511
16  Those reports have been reviewed in detail, and may well have been the basis for the Court of
17  Appeal's description. More importantly, petitioner does not take issue with the description.
18        In addition, the arrest reports for this prior reference another prior where petitioner
19  was convicted of orchestrating an attempted homicide on a probation officer who managed to
20  survive her gunshot wounds. Petitioner does not contest use of this prior to enhance his sentence.
21        There is little wonder that the Romero motion was withdrawn; it did not have a
22  chance. Whatever the facts are with respect to defense counsel's reading a preliminary hearing
23  transcript, and even assuming counsel did not read the transcript[9], petitioner could have suffered
24  no prejudice from his counsel's lack of diligence.

---

[9] It may be that counsel confused reading the arrest reports with having read a transcript.

For all these reasons this claim should be denied.

Medical Records

Plaintiff's final argument involves counsel's failure to obtain the medical records of the victim.

The Court of Appeal opinion sets forth the relevant background of this claim:

> [Petitioner's] final contention regarding the Marsden motion, that counsel was ineffective for failing to seek D.'s psychological records, was brought to the trial court's attention by counsel rather than by [petitioner]. While his wife's mental health records could have been relevant had defendant gone to trial, defendant raised his Marsden motion after pleading guilty.
>
> We also reject [petitioner's] contention that examination of D.'s medical records might have made counsel aware that D. would be unwilling to go through the rigors of a trial. D. was not the only witness to [petitioner's] attacks against her. Their son also told officers that he saw [petitioner] push his mother onto the couch and that he had witnessed prior attacks by [petitioner] against her. The letter submitted at the restitution hearing does not indicate that D. was too incapacitated to go through the rigors of a trial. Any contention that she might have been unwilling to go through a trial is speculative and not a ground for granting the Marsden motion.

People v. Jones, 2008 WL 510558 at *3.

Even reviewing this claim under an ineffective assistance of counsel standard, petitioner's argument fails. Petitioner's argument is far to tenuous to demonstrate any errors on counsel's behalf. Petitioner is assuming there would have been valuable evidence, but there is no indication that any relevant medical evidence actually existed, petitioner merely theorizes. Moreover, a prediction about whether the victim would be able to testify based on a medical condition set forth in medical records would require extreme speculation except in the clearest of medical situations. Whatever condition the victim had, it certainly did not stop her from obtaining a protective order. Nor did petitioner believe that she would not testify on account of a medical condition; that is why he affirmatively attempted to dissuade her from so doing in the first place. As the state court noted, even if there was medical evidence that could have been used against the victim, or if she did not testify, there was another witness available to testify. Furthermore, any medical evidence would have been irrelevant to the charges of evading a police

1 officer and dissuading witnesses.

2     This claim should be denied.

3     <u>Claim 5</u>- Withdrawal of Guilty Plea

4     Petitioner next argues that his substitute counsel was ineffective for failing to move to withdraw the guilty plea.

6     This claim was also denied on direct appeal by the Court of Appeal.

> After the trial court denied the <u>Marsden</u> motion, [petitioner] immediately moved to withdraw his guilty plea. The court then appointed another attorney to represent [petitioner] "for the limited purposes of filing, preparing a motion for him to withdraw his plea." Fifteen days later, substitute counsel informed the court he had obtained copies of the preliminary hearing and felony plea transcripts, the felony plea and waiver form, had reviewed the probation report, had spoken with trial counsel, and had met with [petitioner]. Counsel declared he could "find no legal reason or justification to file a motion to withdraw a guilty plea" on [petitioner's] behalf.
>
> As justification for this statement, substitute counsel informed the court it was his understanding and belief that [petitioner] "understood the charges pending against him, that he was informed of those charges. He was properly informed of his rights to go to trial" along with his other statutory and constitutional rights. Substitute counsel stated he would not file a frivolous motion on behalf of [petitioner]. [Petitioner] expressed his disagreement and requested appointment of new counsel to file a writ of mandate. The trial court denied the request.
>
> [Petitioner] contends the evidence brought forth at the <u>Marsden</u> hearing demonstrates trial counsel was ineffective for allowing [petitioner] to plead guilty, and therefore substitute counsel was ineffective for failing to review the <u>Marsden</u> transcripts. We disagree.
>
> To establish ineffective assistance of counsel, [petitioner] must demonstrate that counsel's performance was deficient and defendant suffered prejudice as a result. (<u>Strickland v. Washington</u> (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674].) As we have already ruled, [petitioner's] <u>Marsden</u> motion did not establish he had been prejudiced by trial counsel's representation. Therefore, trial counsel was not ineffective in allowing [petitioner] to plead guilty.
>
> Nor did substitute counsel render ineffective assistance to [petitioner] by failing to file a motion to withdraw the guilty plea. Penal Code section 1018 provides in relevant part: "On application of the defendant at any time before judgment ..., the court may, ... for a good cause shown, permit the plea of guilty [or no contest] to be withdrawn and a plea of not guilty substituted.... This section shall be liberally construed to effect these objects and to promote justice." "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.] But good cause must be shown by clear and convincing evidence." (<u>People v. Cruz</u> (1974) 12 Cal.3d 562, 566.)

18

> Since the <u>Marsden</u> motion did not establish any basis for concluding trial counsel was ineffective, substitute counsel's failure to examine the transcript of the <u>Marsden</u> hearing did not prejudice [petitioner].
>
> Lacking grounds for a motion to vacate the plea, substitute counsel correctly refused to file the motion. Counsel was not required to undertake futile acts or file a meritless motion. (<u>People v. Anderson</u> (2001) 25 Cal.4th 543, 587.) [Petitioner] has not shown ineffective assistance by either counsel.

<u>People v. Jones</u>, 2008 WL 510558 at *3-4.

Petitioner requested a new attorney to investigate withdrawing his guilty plea and the trial court complied. The substitute attorney investigated the claims and ultimately felt there was no basis to withdraw the plea. That petitioner did not agree with this decision, will not support a claim of ineffective assistance of counsel. Similar to California law, the Ninth Circuit has held that failure to raise a meritless legal argument does not constitute ineffective assistance of counsel. <u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994).

Even if substitute counsel erred by not moving to withdraw the plea, petitioner has failed to show that any such motion would have been successful. By all accounts it appears that any motion would have been denied, thus petitioner cannot show prejudice. Each of the allegations plaintiff set forth in the <u>Marsden</u> hearing that he now uses to demonstrate that his plea should be withdrawn, was discussed by the undersigned above and allegations were found to be meritless. Petitioner's claim herein is likewise is frivolous and should be denied.

V. <u>Conclusion</u>

As all of petitioner's allegations fail to set forth colorable claims, an evidentiary hearing is not required and this petition should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement. 28 U.S.C. § 2253(c)(3).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 8, 2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

jone2169.hc